UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN OLIVARRIA,

                Plaintiff,

    - against -

BLOOMBERG L.P.,

               Defendant.

------------------------------------------------------------x

Index No. 08CV6242 (RJH)

NOTICE OF REMOVAL

        PLEASE TAKE NOTICE that Defendant Bloomberg L.P. ("Bloomberg"), by and through its undersigned counsel, Willkie Farr & Gallagher LLP, pursuant to 28 U.S.C. §§ 1441 and 1446, submits this Notice of Removal of this action to the United States District Court for the Southern District of New York from the Supreme Court of the State of New York, County of New York. In support of this Notice of Removal, Defendant states:

        1.     On May 30, 2008, Plaintiff John Olivarria filed a Summons and Complaint in this action in the Supreme Court of the State of New York, County of New York. The case was assigned the Index No. 107575/08.

        2.     On or about June 13, 2008, Defendant's undersigned counsel received by mail from Plaintiff a copy of the Summons with Complaint, and a request to complete the enclosed Acknowledgment of Receipt of Summons and Complaint.

        3.     On June 20, 2008, Defendant mailed to Plaintiff the completed Acknowledgment. Attached to this Notice of Removal are copies of the Summons, Complaint, and Acknowledgment.

        4.     To date, Defendant is aware of no further proceedings in this action.

5. This action is removable to the district court because Plaintiff's Complaint asserts a civil action based on the laws of the United States -- 42 U.S.C. § 2000e et seq. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over civil actions arising under the laws of the United States. Pursuant to 28 U.S.C. §§ 1441(a), 1441(b), and 1441(c), a defendant may remove a civil action brought in a State court that asserts a claim of which the district courts of the United States would have original jurisdiction. Such action may be removed to the district court of the United States for the district and division embracing the place where such action is pending. Therefore, this action is removable to this Court.

6. Written notice of the filing of this Notice of Removal will be provided to Plaintiff, and a copy of this notice will be filed in the State court, as required by 28 U.S.C. § 1446(d).

7. This Notice of Removal is being filed within 30 days after service of the Summons and Complaint.

WHEREFORE, Defendant hereby removes this action from the Supreme Court of the State of New York, County of New York to this Court.

Dated: July 9, 2008

|  |  |
|---|---|
| TO: Clerk of Court<br>United States District Court<br>Southern District of New York<br>500 Pearl Street<br>New York, New York 10007<br><br>James A. Batson, Esq.<br>Andrea M. Paparella, Esq.<br>Liddle & Robinson, L.L.P.<br>800 Third Avenue<br>New York, NY 10022<br><br>Attorneys for Plaintiff<br>John Olivarria | WILLKIE FARR & GALLAGHER LLP<br><br>By: _/s/ Martin Klotz_<br>Martin B. Klotz<br>Thomas H. Golden<br><br>787 Seventh Avenue<br>New York, NY 10019<br>(212) 728-8000<br>mklotz@willkie.com<br>tgolden@willkie.com<br><br>Attorneys for Defendant<br>Bloomberg L.P. |

**Supreme Court of the State of New York**
**County of** New York

JOHN OLIVARRIA,

                                                                  Plaintiff

                    against

BLOOMBERG L.P.,

                                                          Defendant

Index No. 107575/08
Date purchased

Plaintiff(s) designate(s)
New York
County as the place of trial.

The basis of the venue is
place of employment

**Summons**

Plaintiff(s) reside(s) at
227 East 57th Street, Apt. 5F
New York, NY 10022
County of New York

To the above named Defendant

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated, May 30, 2008

                                                                     Attorney(s) for Plaintiff

                                                                     Office and Post Office Address

Defendant's address:
Bloomberg L.P.
731 Lexington Avenue
New York, NY 10022

James A. Batson, Esq.
Andrea M. Paparella, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, NY 10022

NEW YORK
COUNTY CLERK'S OFFICE
MAY 30 2008
NOT COMPARED
WITH COPY FILE

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK, COUNTY OF              SS:   The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at
That on                    at            M., at
deponent served the within summons,                on                                             defendant,

**INDIVIDUAL**
1. ☐ by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.

**CORPORATION**
2. ☐ a                    corporation, by delivering thereat a true copy *of each* to
personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be                    thereof.

**SUITABLE AGE PERSON**
3. ☐ by delivering thereat a true copy *of each* to                                        a person of suitable age and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**
4. ☐ by affixing a true copy *of each* to the door of said premises, which is defendant's—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4**
5A. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at                                         and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4**
5B. ☐ Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to defendant at defendant's actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

**DESCRIPTION USE WITH 1, 2, OR 3**
☐
| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
|  | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
|  | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
|  | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

*Sworn to before me on*                             Print name beneath signature. ...........................................................................

                                                          LICENSE NO. ...........................................

---

*Index No.*
Supreme Court of the State of New York
County of New York

John Olivarria,
                                            *Plaintiff(s)*
against

Bloomberg L.P.
                                            *Defendant(s)*

**Summons**
ACTION NOT BASED UPON A
CONSUMER CREDIT TRANSACTION

*Attorney(s) for Plaintiff(s)*

*Office, Post Office Address and Tel. No.*
James A. Batson, Esq.
Andrea M. Paparella, Esq.
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, NY 10022
(212) 687-8500

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x
JOHN OLIVARRIA,                                    :    Index No. 107575/08
                        Plaintiff,                 :
                                                   :    **COMPLAINT**
            -against-                              :
                                                   :    NEW YORK
BLOOMBERG L.P.,                                    :    COUNTY CLERK'S OFFICE
                                                   :
                        Defendant.                 :    MAY 30 2008
------------------------------------------------------------x
                                                        NOT COMPARED
                                                        WITH COPY FILE

Plaintiff John Olivarria, by his attorneys, Liddle & Robinson, L.L.P., for his Complaint alleges as follows:

### THE PARTIES

1.  Mr. Olivarria is a gay male. He resides at 227 East 57th Street, Apartment 5F, New York, New York 10022. Mr. Olivarria was employed by Defendant Bloomberg L.P. ("Bloomberg") from 2001 until September 22, 2006.

2.  Upon information and belief, Bloomberg is a limited partnership organized under the laws of Delaware, with its principal place of business located at 731 Lexington Avenue, New York, New York 10022.

### THE NATURE OF THE ACTION

3.  This is a civil action for damages and remedies brought under: (1) the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.; (2) the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. and (3) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

## JURISDICTION AND VENUE

4. Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. § 1367.

5. Mr. Olivarria served copies of this Complaint upon the New York City Commission on Human Rights and the Corporation Counsel prior to filing it in the Supreme Court of the State of New York, New York County.

6. Venue is proper in this district under 28 U.S.C. § 1391(a) because Defendant resides in the Southern District of New York.

## FACTS

7. Mr. Olivarria has been a makeup artist and hair stylist for approximately twenty years. Through the years, his clients have included Cindy Crawford, Ricky Martin, Mariah Carey, Nikki Taylor, Kate Moss, Carla Bruni, Charlize Theron, Sandra Bullock, Heather Locklear, Gisele Bundchen, Ben Stiller, Jack & Christine Wagner, Wendy Mallick, Patti Austin, Bill Clinton, Benicio del Toro, and Jerry Seinfeld.

8. Mr. Olivarria was employed as a makeup artist and hair stylist by Bloomberg for approximately five years until Bloomberg terminated his employment on Friday, September 22, 2006.

9. During his employment, Mr. Olivarria worked within Bloomberg's Financial News Division. The location of where the makeup artists and hair stylists work is referred to at Bloomberg as the Makeup Room.

10. During the entire period Mr. Olivarria was employed at Bloomberg, he was the only male makeup artist and hair stylist. Indeed, he was the Makeup Room's only male employee.

## Bloomberg's Financial News Division

11. Bloomberg's Financial News Division employs news anchors from around the world. For example, it employs anchors from Italy, France, and Germany. These international anchors are referred to as anchor teams — the Italian anchor team, the French anchor team, the German anchor team.

## The Brazilian Anchor Team And The Makeup Room Have A Long History Of Animosity

12. There is a long history of animosity between the Brazilian anchor team and the Makeup Room.

13. For example, a few years ago, a woman on the Brazilian anchor team named Dagmar[1] reported to Human Resources that Sharon Slattery, the manager of the Makeup Room, had physically pushed her. Ms. Slattery was not terminated as a result of this incident. Indeed, Ms. Slattery is still employed by Bloomberg in the Makeup Room, where she continues to interact with the Brazilian anchor team.

---

[1] Mr. Olivarria cannot recall Dagmar's last name.

14. During Mr. Olivarria's employment at Bloomberg, another example of this animosity was the ongoing heated tension between the Brazilian anchor Denise Barboza and Melissa "Micky" Williams, a hair stylist and makeup artist who was employed in the Makeup Room, like Mr. Olivarria. In fact, Ms. Barboza and Ms. Williams's relationship was so poor that Ms. Barboza would not come into the Makeup Room if Ms. Williams were present. Ms. Barboza would not let Ms. Williams do her hair and makeup. Despite the disruption caused by their turbulent relationship, Bloomberg did not terminate the employment of Ms. Barboza or Ms. Williams.

15. The animosity between the Makeup Room and the Brazilian anchor team had been particularly bad for approximately the month and a half long period before Bloomberg terminated Mr. Olivarria's employment. It was in this context that Bloomberg terminated Mr. Olivarria's employment.

16. Notably, prior to this period, Mr. Olivarria had never been involved in this animosity. Indeed, Ms. Barboza, who, as described above, did not get along with Ms. Williams, would call Mr. Olivarria before she came to the Makeup Room to inquire whether Ms. Williams was present.

17. There finally came a time when Mr. Olivarria was no longer immune from the turbulent relations between the Makeup Room and the Brazilian anchor team.

18. Apparently, in approximately mid-September 2006, a Brazilian anchor named Laura[2] who had just begun employment with Bloomberg reported that Mr. Olivarria said "the entire Brazilian anchor team should be eliminated." Mr. Olivarria never said this.

---

[2] Mr. Olivarria cannot recall Laura's last name.

4

19. Mr. Olivarria did say, however, that "[he] wish[ed] [they] could eliminate the whole problem between the Makeup Room and the Brazilian team."

20. After Laura made the false report about Mr. Olivarria, Sharon Slattery, his manager, Mike Manana, a senior manager, Mike Clancy, the Head of Television at Bloomberg, and Gary Lou, another senior manager, had a meeting to discuss the prospect of terminating Mr. Olivarria's employment.

21. Following this meeting, on September 22, 2006, at 11:15 a.m., Ms. Slattery and Mr. Manana called Mr. Olivarria into a conference room for a meeting.

22. During this meeting, Ms. Slattery and Mr. Manana questioned Mr. Olivarria regarding whether he had said "the entire Brazilian anchor team should be eliminated." Mr. Olivarria told them "no [he] would never say something like that."

23. Shortly after the meeting had commenced, Ms. Slattery blurted out the following statement:

24. "I told them that you're not *that* gay. I mean you may be a little bit queeny, but you're not one of those gay guys who are vicious or mean. ..."

25. Mr. Olivarria did not understand why Ms. Slattery made this statement and he replied, "okay, and ... "

26. Mr. Manana then stated:

> "They want to fire you, but Sharon and I went to bat for you. We both put our jobs on the line and said, 'John is very valuable to this operation. Sharon counts on John to run the Makeup Room Monday through Friday, 3:45 a.m. to 7:30 a.m. ... and one Saturday a month.' "

27. Ms. Slattery then stated that during the earlier meeting regarding the prospect of terminating Mr. Olivarria's employment she had added the following comment:

5

"After five years of loyalty and devotion we can't just let him go!"

28.   Mr. Manana then stated that during the earlier meeting regarding the prospect of terminating Mr. Olivarria's employment, the head of Television at Bloomberg, Mike Clancy, said "This is yet another example of a conflict with the Brazilians versus the Makeup Room. Let him go."

29.   After Mr. Clancy made this comment, according to Ms. Slattery and Mr. Manana, they then told Mr. Clancy that they did not want Mr. Olivarria to be fired. Persuaded by Ms. Slattery and Mr. Manana, it was eventually decided that Mr. Olivarria would be suspended rather than terminated.

30.   This was the message that Ms. Slattery and Mr. Manana gave Mr. Olivarria during their meeting on September 22, 2006 — Bloomberg was suspending Mr. Olivarria, without pay for two weeks.

31.   Mr. Olivarria believed Bloomberg's decision to suspend him was unfair. Bloomberg believed Laura, who had been employed by Bloomberg for approximately only one month, over Mr. Olivarria, an employee of approximately five years. Ms. Slattery and Mr. Manana agreed with Mr. Olivarria and promised him that they would try to reverse the decision to suspend him. They then excused Mr. Olivarria from the meeting and told him to go home and wait for an update.

32.   Later that day, at approximately 5:00 p.m., Ms. Slattery called Mr. Olivarria. She stated: "I've been dreading to make this call. I'm sorry, I did everything I could ... they, they no longer need your services. I really went to bat for you, but they just decided

6

they don't need your services. The Brazilian girls say you make them feel 'uncomfortable.' I'm so sorry, John. I feel terrible, but this is their decision."

33. Mr. Olivarria could not believe it. He said to Ms. Slattery, "You've got to be kidding me. Sharon you're not serious."

34. Ms. Slattery, in tears, said "It's not right, it's just not fair. Two new anchors from Brazil and then you get fired. It's not fair that you got the bum wrap."

35. Upon information and belief, at all relevant times, the people at Bloomberg who made the decision to terminate Mr. Olivarria's employment were aware that Mr. Olivarria is gay.

### Bloomberg Discriminated Against Mr. Olivarria — The Only Male In The Makeup Room

36. Mr. Olivarria believes Bloomberg discriminated against him on the basis of his gender and sexual orientation when it terminated his employment.

37. Mr. Olivarria is the only male in the Makeup Room.

38. After all of the repeated conflicts between the makeup room and the Brazilian anchor team, he was the only employee of the Makeup Room whose employment Bloomberg terminated.

39. Throughout his employment with Bloomberg, he was qualified for his position and performed his job at a level that met or exceeded Bloomberg's expectations. Indeed, prior to the above-described incident when a false report was made against him, Bloomberg had never questioned his performance nor did it ever inform him of any complaint made about him.

## Many Anchors At Bloomberg Were Outraged About Bloomberg's Termination Of Mr. Olivarria's Employment

40. Many anchors at Bloomberg were outraged about Bloomberg's termination of Mr. Olivarria's employment. Indeed, quite a few anchors at Bloomberg called him personally to express their outrage. He also received calls and e-mails of support and reports of outrage and protest from other members of the staff.

41. Encouraged by the support he received, Mr. Olivarria called Bloomberg's Human Resources Department ("HR") for instructions on how to appeal the termination decision. HR informed him that he had no right to appeal the decision because he was "an independent contractor ... and that it was simply a case of your services no longer being needed."

42. Mr. Olivarria responded to HR that many members of the staff were saying that his services were in fact very much needed and that as someone who worked full time for five years, he must have at least some rights. HR refused to assist him.

## Mr. Olivarria Suffered Damages As A Result Of Bloomberg Terminating His Employment

43. Mr. Olivarria suffered damages as a result of Bloomberg terminating his employment.

44. Prior to Bloomberg terminating his employment, Mr. Olivarria earned approximately $100,000.00 per year.

45. Mr. Olivarria could not secure steady employment for approximately ten months after Bloomberg terminated his employment.

8

46. When Mr. Olivarria finally found new employment, it was for much less compensation.

47. In addition to losing income, Mr. Olivarria also suffered humiliation as a result of Bloomberg unlawfully terminating his employment.

## FIRST CAUSE OF ACTION
(Discrimination on the Basis of Sex and Sexual Orientation
Under the New York State Human Rights Law)

48. Mr. Olivarria repeats and re-alleges the allegations contained in paragraphs 1 through 47 as if separately set forth herein.

49. At all relevant times, Mr. Olivarria was an "employee" of Bloomberg for purposes of §§ 292 and 296 of the New York State Human Rights Law.

50. Bloomberg is an "employer" for purposes of §§ 292 of the New York State Human Rights Law.

51. By its actions detailed above, Bloomberg has discriminated against Mr. Olivarria on the basis of his sex and sexual orientation.

52. As a result of Bloomberg's actions, Mr. Olivarria has suffered substantial damages, including but not limited to emotional pain and mental anguish and lost wages and benefits, in amounts to be determined at trial.

53. The treatment of Mr. Olivarria constituted willful discrimination because of Mr. Olivarria's sex and sexual orientation in violation of § 296 of the New York State Human Rights Law.

## SECOND CAUSE OF ACTION
(Discrimination on the Basis of Sex and Sexual Orientation
Under the New York City Human Rights Law)

54. Mr. Olivarria repeats and re-alleges the allegations contained in paragraphs 1 through 53 as if separately set forth herein.

55. Mr. Olivarria is a "person" under § 8-102(1) of the New York City Human Rights Law.

56. Upon information and belief, Bloomberg is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

57. By its actions detailed above, Bloomberg discriminated against Mr. Olivarria on the basis of his sex and sexual orientation.

58. The treatment of Mr. Olivarria constitutes willful discrimination on the basis of sex and sexual orientation in violation of § 8-107 of the New York City Human Rights Law.

59. By reason of the foregoing, Mr. Olivarria has suffered substantial damages, including but not limited to emotional pain and mental anguish and lost wages and benefits, in amounts to be determined at trial.

60. Upon information and belief, Bloomberg's discriminatory conduct was taken with reckless indifference to Mr. Olivarria's rights, entitling him to punitive damages under § 8-502 of the New York City Human Rights Law.

### **THIRD CAUSE OF ACTION**
(Discrimination on the Basis of Sex under Title VII)

61. Mr. Olivarria repeats and re-alleges the allegations contained in paragraphs 1 through 60 as if separately set forth herein.

62. At all relevant times, Mr. Olivarria was an "employee" of Bloomber under Title VII, 42 U.S.C. § 2000e(f).

63. Upon information and belief, Bloomberg is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

64. By its actions detailed above, Bloomberg discriminated against Mr. Olivarria because of his sex in violation of Title VII, 42 U.S.C. § 2000e-2(a).

65. As a result of Bloomberg's actions, Mr. Olivarria has suffered substantial damages, including lost wages and benefits and emotional distress, in amounts to be determined at trial.

66. Upon information and belief, Bloomberg's discriminatory conduct was engaged in with malice and/or reckless indifference to Mr. Olivarria's federally protected rights. Mr. Olivarria is therefore entitled to punitive damages under Title VII.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. On the First Cause of Action, back pay and benefits and front pay and benefits, plus compensatory and punitive damages, attorneys' fees, costs and interest, all in amounts to be determined at trial;

B.   On the Second Cause of Action for violation of the New York State Human Rights Law, back pay, front pay or reinstatement, plus compensatory damages, costs and pre-judgment interest, all in amounts to be determined at trial;

C.   On the Third Cause of Action for violation of the New York City Human Rights Law, back pay, front pay or reinstatement, plus compensatory and punitive damages, attorneys' fees, costs and pre-judgment interest, all in amounts to be determined at trial; and

D.   All such other and further relief as this Court deems just and proper.

Dated: New York, New York
       May 30, 2008

                                        LIDDLE & ROBINSON, L.L.P.

                                        By: _____
                                            James A. Batson
                                            Andrea M. Paparella
                                        800 Third Avenue
                                        New York, New York 10022
                                        (212) 687-8500

                                        *Attorneys for Plaintiff*

Index No. 107575/08

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

JOHN OLIVARRIA,

    Plaintiff,

-against-

BLOOMBERG L.P.,

    Defendant.

**SUMMONS AND COMPLAINT**

Attorneys for Plaintiff

**LIDDLE & ROBINSON, L.L.P.**
800 THIRD AVENUE
NEW YORK, NEW YORK 10022
(212) 687-8500